## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| MARK A. GREEN, | § | |
| #01858572 | § | |
| PETITIONER, | § | |
| | § | |
| V. | § | CIVIL CASE NO. 3:20-CV-1725-N-BK |
| | § | |
| DIRECTOR, TDCJ-CID, | § | |
| RESPONDENT. | § | |

## FINDINGS, CONCLUSIONS AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636(b) and *Special Order 3*, Petitioner Mark A. Green's *pro se* petition for writ of habeas corpus under 28 U.S.C. § 2254, was referred to the United States magistrate judge for case management, including the issuance of findings and a recommended disposition where appropriate. As detailed here, the habeas petition should be **DENIED**.

## I.    BACKGROUND

In 2013, a jury found Green guilty of continuous sexual abuse of a child and sentenced him to 50 years' imprisonment. Doc. 3 at 2; *State v. Green*, No. C34,826-CR (Cnty. Court at Law, Navarro Cnty., Tex., Apr. 5, 2013). The judgment was affirmed on appeal, and the Texas Court of Criminal Appeals refused Green's petition for discretionary review. *Green v. State*, No. 10-13-00131-CR (Tex. App.–Waco, June 26, 2014, pet. ref'd); *Green v. State*, No. PD-1209-17 (Tex. Crim. App. Feb. 28, 2018). Subsequently, the Texas Court of Criminal Appeals denied Green's request for state habeas relief without written order on the trial court's findings and its own independent review of the record. *Ex parte Green*, WR-86,437-02 (Tex. Crim. App. June

17, 2020); Doc. 15-1 at 3.[1]  Green then filed this timely federal habeas petition, alleging a

panoply of issues, including jury and trial court errors, prosecutorial misconduct, ineffective

assistance of counsel, and actual innocence.  Doc. 3 at 6-12.  Respondent argues Green's claims

lack merit.  Doc. 15.  Green has filed a reply.  Doc. 18.

Upon review, the Court concludes that Green has not demonstrated that the state court's

decision rejecting his claims was based on an unreasonable determination of fact or an

unreasonable application of clearly established federal law.  Consequently, Green's claims fail.

## II.    APPLICABLE STANDARD

Under the deferential standard set out in the Antiterrorism and Effective Death

Penalty Act of 1996 ("AEDPA"), a petitioner is not entitled to federal habeas corpus relief unless

the state court's adjudication on the merits:

> (1) resulted in a decision that was contrary to, or involved an unreasonable
> application of, clearly established Federal law, as determined by the Supreme Court
> of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the
> facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The petitioner bears the burden of establishing that he is entitled to relief.  *Woodford v.

Visciotti*, 537 U.S. 19, 25 (2002).  However, that burden is "difficult to meet," *Harrington v.

Richter*, 562 U.S. 86, 102, 105 (2011), because the state court's decision is reviewed under a

"highly deferential" standard and afforded the "benefit of the doubt."  *Woodford*, 537 U.S. at 24

(citation and internal quotation marks omitted).  Section 2254(d) "was meant to stop just short of

imposing a complete bar to federal court relitigation of claims already rejected in state court

---

[1] The Court cites to the *Appendix* filed with the State's Response where possible.  Doc. 15-1.

proceedings, allowing for federal habeas relief only where there have been 'extreme malfunctions in the state criminal justice systems.'" *Wilson v. Cain*, 641 F.3d 96, 100 (5th Cir. 2011) (quoting *Richter*, 562 U.S. at 102). Consequently, as long as "'fairminded jurists could disagree' on the correctness of the state court's decision," federal habeas relief should not be granted. *Richter*, 562 U.S. at 102 (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Explained differently, "even if the federal court disagrees with the state court ruling, the federal court should not grant habeas relief unless the state court ruling was objectively unreasonable." *Wilson*, 641 F.3d at 100; *see Richter*, 562 U.S. at 101 ("[A]n *unreasonable* application of federal law is different from an *incorrect* application of federal law.") (quotations and citations omitted; emphasis in original).

## III.    ANALYSIS

### A.  Fair and Impartial Jury

Green asserts he was denied a fair and impartial jury because venireman Dan Holllingsworth (No. 21) made prejudicial, "expert-like" comments during *voir dire* before he was excused from service because he could not abide by the presumption of innocence. Doc. 3 at 6-7. Specifically, Green complains that the entire venire panel likely heard Hollingsworth's statements that, as a detective specializing in crimes against children, he "never encountered a [child abuse] case that was unfounded" and believed "the odds are that [the defendant] is likely guilty." Doc. 13-4 at 69 (RR 2); Doc. 3 at 6. Green surmises this was an "outside influence" that tainted the entire jury panel. *See Dorsey v. Quarterman*, 494 F.3d 527, 531 (5th Cir. 2007) ("[I]if a jury is exposed to an outside influence, a rebuttable presumption of prejudice arises." (citing *Drew v. Collins*, 964 F.2d 411, 415 (5th Cir. 1992)). However, Green does not allege, much less show, any prejudicial effect on the jury in his case—that any of the jurors was unable

to apply the presumption of innocence in his case.  Indeed, Green offers no basis aside from his

speculation that any juror even took note of Hollingsworth's statements at *voir dire*.  *See Dorsey*,

494 F.3d at 5 ("[E]ven when there has been extrinsic influence on the jury, such error is subject

to harmless error analysis.").  As the state habeas court found, "one of the key purposes of *voir*

*dire* is to discover a venire member's prejudices."  Doc. 15-1 at 10 (no. 2).  The state court also

found that Green's "complaint about venire member 21's response during *voir dire* would have

been overruled because a venire member's responses are generally not objectionable."  *Id.*

Under these circumstances, the state court's implicit decision denying Green's fair-and-impartial

jury claim was based neither on an unreasonable determination of fact nor an unreasonable

application of clearly established federal law.

      **B.  Jury Charge Errors**

      Green alleges three errors in the jury charge, which he claims deprived him of a fair trial:

(1) the "on or about" definition is incomplete and misplaced, (2) the "intent to arouse or gratify

sexual desire" definition is missing from the abstract law section, and (3) the phrase "in Navarro

County, Texas" is omitted from the abstract law and application paragraphs.  Doc. 3 at 7.  The

state habeas court found no error, however, concluding the trial court had the "discretion to

define 'on or about' for the jury," the "definition of 'intent' was legally sufficient," and "there

[was] no legal requirement that a specific county be alleged or proven in a charge of continuous

sexual abuse."  Doc. 15-1 at 11 (No. 9).

      Green's bare assertions do not demonstrate "prejudice of constitutional magnitude."

*Galvan v. Cockrell*, 293 F.3d 760, 764-65 (5th Cir. 2002) ("Improper jury instructions . . . do not

generally form the basis for federal habeas relief" and the proper inquiry is "whether there was

prejudice of constitutional magnitude.").  Even assuming the jury instructions were faulty, any

error was harmless because, in light of the strong evidence of Green's guilt, there is no basis to believe the jury's verdict would have been different. *Id.* ("[A] constitutional error is not harmless if it 'had substantial and injurious effect or influence in determining the jury's verdict.'" (*quoting Brecht v. Abrahamson*, 507 U.S. 619, 623-24 (1993))). In any event, the state court's decision impliedly rejecting these claims was based neither on an unreasonable determination of fact nor an unreasonable application of clearly established federal law.

### C. *Brady* Claim

Green alleges the State suppressed evidence of the sexual assault nurse examiner ("SANE") examination of the victim and the victim's medical records from an April 10, 2012 visit at Baylor Waxahachie hospital. Doc. 3 at 8. He avers that he "first learned" of these records in December 2017 when the victim AV gave him a copy. *Id.* Contrary to Green's allegations, the records he references were not of a SANE exam; instead they were of AV's hospital visit following her outcry, and included a blood panel, STD tests, hospital discharge papers, a pelvic exam, and a notice that Child Protective Services was alerted. Doc. 13-8 at 21-23 (RR 6); Doc. 16-23 at 136-158 (Baylor medical records). Investigator Amy Eillison testified that no SANE exam was conducted because of the nature of the outcry and the length of time that had elapsed (a couple of weeks) since the alleged sexual assault. Doc. 13-8 at 21-23.

Tellingly, Green does not identify anything within the Baylor medical records that could be exculpatory, impeaching, or mitigating. Doc. 3 at 8-9; Doc. 18 at 6-7. And his reply argument that "[t]he outcry dates do not match the dates alleged by the State" is unavailing. Doc. 18 at 7. The indictment charged him with committing two or more acts of sexual abuse from on or about October 1, 2011 to April 1, 2012. Doc. 13-2 at 11. The Baylor medical records

noted the assault began in January 2012 and continued until three weeks before the April 10, 2012 hospital visit. Doc. 16-23 at 139, 154.

On this record, Green cannot establish that the State failed to disclose evidence that was favorable and material to his defense. *See Brady v. Maryland*, 373 U.S. 83, 87 (1963) (to establish a *Brady* violation, a petitioner must prove (1) the prosecutor suppressed or withheld evidence (2) that was favorable and (3) material to his guilt or punishment). Because the state court's implicit determination rejecting this issue was based neither on an unreasonable determination of fact nor an unreasonable application of clearly established federal law, this claim has no merit.

### D. Perjured Testimony

Green contends the prosecution knowingly permitted AV to give perjured testimony. He relies on an affidavit that AV wrote in 2018, long after the trial, recanting her trial testimony. Doc. 3 at 9; Doc. 15-1 at 20 (AV's affidavit).

It is true that the prosecution may not knowingly use perjured testimony or allow perjured testimony to go uncorrected. *Napue v. Illinois*, 360 U.S. 264, 269 (1959); *Giglio v. United States*, 405 U.S. 150, 154 (1972). However, to establish a due process violation, a petitioner must demonstrate (1) that the testimony in question was actually false, (2) that the prosecutor was aware of the perjury, and (3) that the testimony was material. *Faulder v. Johnson*, 81 F.3d 515, 519 (5th Cir. 1996).

The 2018 affidavit was not the first time that AV had recanted, however. The jury was very familiar with her prior recantations and rationale for recanting—namely that she (1) would no longer have Green's "attention," which she had previously described as "physical" and touching of her "private parts," and (2) had "promised" Green that she "would keep it a secret"

because she would be ashamed if Green's children would be taken away due to her participation. Doc. 13-7 at 225-226 (RR 5); Doc. 13-7 at 206.  Despite knowing of AV's prior recantations, the jury found Green guilty, choosing to believe AV's trial testimony.  Green does not dispute this. Moreover, some of the statements in AV's 2018 affidavit are simply irreconcilable.  AV states, "I can not [sic] sit by and allow [Green] to remain convicted of a crime he did not commit," but, in the next sentence, she adds, "[o]r a crime that me, as a confused child, *helped to Happen*." Doc. 15-1 at 22 (emphasis added).  Instead of being exculpatory, AV's later statements only confirm Green's sexual assault of the minor-victim.  Again, despite previous, similar recantations, the jury found the evidence sufficient to convict Green.

Green fails to offer any factual or legal support for his perjured-testimony claim and his bare assertions do not establish that material, false or misleading testimony was admitted at trial. *See Ross v. Estelle*, 694 F.3d 1008, 1011 (5th Cir. 1983) (cited cases omitted) ("Absent evidence in the record, a court cannot consider a habeas petitioner's bald assertions on a critical issue in his *pro se* petition . . . , unsupported and unsupportable by anything else contained in the record, to be of probative evidentiary value").  As discussed supra, Green's apparent focus is on AV's repeated recantations, rather than her specific trial testimony.  However, Green's disagreement with Av's testimony falls well short of any proof that she testified falsely at trial.  "Conflicting or inconsistent testimony is insufficient to establish perjury." *Kutzner v. Johnson,* 242 F.3d 605, 609 (5th Cir. 2001) (citing *Koch v. Puckett,* 907 F.2d 524, 531 (5th Cir. 1990)).  Rather, "contradictory trial testimony . . . merely establishes a credibility question for the jury." *Koch,* 907 F.2d at 531  (inconsistencies in witnesses' testimony at trial are to be resolved by the trier of fact and do not suffice to establish that certain testimony was perjured (citations omitted)); *see also Marler v. Blackburn*, 777 F.2d 1007, 1012 (5th Cir. 1985) ("A federal court may not

substitute its own judgment regarding the credibility of witnesses for that of the state courts."). And absent a showing that the testimony at issue was actually false and that the prosecutor knew it was false, Green cannot establish a constitutional violation. *See Pierre v. Vannoy*, 891 F.3d 224, 229 (5th Cir. 2018) (finding no constitutional error if the prosecutors does not knowingly present false testimony at trial (citing *Kinsel v. Cain*, 647 F.3d 265, 272 (5th Cir. 2011)).

In any event, the state habeas court found AV's recantation was not credible. Doc. 15-1 at 27 (no. 4). Credibility determinations by the state habeas court are entitled to substantial deference on federal habeas review and are presumed correct under § 2254(e)(1) absent clear and convincing evidence to the contrary. *See Coleman v. Quarterman*, 456 F.3d 537, 541 (5th Cir. 2006) (citing *Guidry v. Dretke*, 397 F.3d 306, 326 (5th Cir. 2005)); *Valdez v. Cockrell*, 274 F.3d 941, 947 (5th Cir. 2001). Green disputes the state court's finding that AV's recantation was not credible. Doc. 18 at 11-12. He argues that AV "fully recants, as best a lay-person without assistance of a legal professional can." Doc. 18 at 12. He also criticizes the State for neglecting to request an order designating issue and "a true fact-finding through evidentiary hearings." Doc. 18 at 12. But he presents no evidence to contradict the state court's credibility determination. Doc. 18 at 11 (arguing only that "the state habeas court's determination of facts is unreasonable in light of the record" . . . "because the record includes no basis for finding the affidavit 'not-credible'").

The state court's finding that AV's recantation was not credible is presumed correct under § 2254(d)(e). "The presumption [of correctness] is especially strong when the state habeas court and the trial court are one in the same," as in this case. *Mays v. Stephens*, 757 F.3d 211, 214 (5th Cir. 2014) (quotations and citations omitted); *Boyle v. Johnson*, 93 F.3d 180, 186 (5th Cir. 1996) ("The presumption is particularly strong where, as here, the habeas court was the

same court that presided over the trial."); *see also Marler*, 777 F.2d at 1011-12 (no evidentiary hearing was needed to address witness' recantation of trial testimony, where jury had heard version of events represented in recantation and chose to ignore that version).

Because the state court's implicit determination of this issue was based neither on an unreasonable determination of fact nor an unreasonable application of clearly established federal law, this claim lacks merit.

### E.  Prosecutorial Misconduct Claims

Green contends that the prosecution committed misconduct by threatening (1) AV to secure her testimony at trial and (2) Green's son, Cavendar Green ("Cavendar"), into not testifying on Green's behalf.  Doc. 3 at 10.

"Prosecutorial misconduct is not a ground for [habeas] relief unless it casts serious doubt upon the correctness of the jury's verdict." *Styron v. Johnson*, 262 F.3d 438, 449 (5th Cir. 2001) (citations omitted).  A prosecutorial misconduct claim requires a court to consider whether the prosecutorial actions "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright,* 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo,* 416 U.S. 637, 643 (1974)).  "[T]he touchstone of due process analysis in cases of alleged prosecutorial misconduct is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips,* 455 U.S. 209, 219 (1982).  "A trial is fundamentally unfair if 'there is a reasonable probability that the verdict might have been different had the trial been properly conducted.'" *Foy v. Donnelly,* 959 F.2d 1307, 1317 (5th Cir. 1992) (citations omitted).

Green asserts the prosecutor coerced AV into testifying by threatening her with prosecution and incarceration if she did not.  Doc. 3 at 10.  He relies on allegations in AV's 2018 affidavit to support his assertion.  *Id.*  In the affidavit, however, AV only states:  "I tried to

change my allegations, but was threatened by the District Attorney's office that if I changed my story to accommodate Mark Green, that I would go to Juvenile and have charges filed against me." Doc. 15-1 at 21. AV further states, "As I went forward with the allegations, I did so under duress of the District Attorney, and not my own free will," and "I testified at his trial very reluctantly." *Id.*

First, as noted previously, the state habeas court found that AV's recantation is not credible and Green has not presented clear and convincing evidence to rebut the same. Doc. 15-1 at 27. Second, even if true, AV asserts only that the prosecutor solely cautioned her to tell the truth and not to modify her story to assist Green. Contrary to Green's assertion, AV does not aver that the prosecutor forced her to testify in a certain manner. Moreover, even viewing the prosecutor's threat if AV did not testify truthfully as misconduct, Green has not shown that it so infected the trial with unfairness as to make the resulting conviction a denial of due process.

Green also contends the prosecutor coerced his son Cavendar into not testifying by threatening to have his juvenile probation revoked. Doc. 3 at 10. He relies exclusively on Cavendar's affidavit, which, like AVs, was prepared long after the trial. Doc. 15-1 at 18. Notwithstanding the veracity of Cavendar's assertions, however, Green's defense counsel explained that Cavendar would have been "a harmful witness" because of "legal and relationship" issues; thus, there would have been no "benefit of calling [Cavendar] as a witness" at trial. Doc. 15-1 at 5. Further, as the record reflects, Green personally asked the trial court for permission to communicate with Cavendar at trial, which was not permitted under Green's bond conditions. Doc. 13-6 at 280-81 (RR 4). The prosecutor informed the Court that Cavendar's probation conditions also prohibited him from communicating with Green and that any contact with Green would violate Cavendar's probation. Doc. 13-6 at 283-84. As such, Green has not

shown any prosecutorial misconduct, let alone misconduct that that so infected the trial as to render it unfair and a violation of his due process rights.

In sum, Green has not shown that the state court's implied decision to deny his prosecutorial misconduct claims was based neither on an unreasonable determination of fact nor an unreasonable application of clearly established federal law.

### F. Ineffective Assistance of Trial Counsel

#### 1. Applicable standard

The Court reviews a petitioner's claims of ineffective assistance of counsel under a "doubly deferential" standard, taking "a 'highly deferential' look at counsel's performance," under *Strickland v. Washington*, 466 U.S. 668, 689 (1984), "through the 'deferential lens of § 2254(d).'" *Cullen v. Pinholster*, 563 U.S. 170, 190 (2011) (quoted cases omitted).  In light of the deference accorded by section 2254(d)(1), "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable."  *Richter*, 562 U.S. 86, 101.

To establish ineffective assistance at trial, a petitioner must show that counsel's performance was deficient and that the deficient performance prejudiced the defense.  *Strickland*, 466 U.S. 668, 687.  The Court need not address both components if the petitioner makes an insufficient showing on one.  *Id.* at 697.  To establish deficient performance, a petitioner must show that his attorney's actions "fell below an objective standard of reasonableness."  *Id.* at 689. In evaluating an attorney's performance, there is a "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance," or that under the circumstances the challenged action might be considered sound trial strategy.  *Id.* at 689.  Under *Strickland*'s prejudice prong, a petitioner additionally must demonstrate that "there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.

2. *Summary of Grounds*

Green raises 16 grounds of ineffective assistance of counsel ("IAC") at trial. In Ground Six, he asserts trial counsel was ineffective at *voir dire* for failing to (a) object to venire member no. 21's expert-like testimony and (b) challenge for cause venire member nos. 9, 14, and 38, on the basis that they would hold Green's failure to testify against him. Doc. 3 at 10. In Ground Seven, Green adds that counsel was ineffective for neglecting to object to: (a) Reggie Stewart's prejudicial testimony concerning Green's reputation and honesty within the community; (b) Katherine Wall's lack of expert qualifications on child sexual abuse; (c) Wall's prejudicial testimony concerning the "set-up" between Green and his wife; (d) Wall's testimony that bolstered the victim's credibility; (e) Detective Eillison's opinion testimony that suggested Green was guilty because he was not convincing in his interview; and (f) Detective Ellison's bolstering the victim's credibility. Doc. 3 at 10-11.

Further, Green complains counsel: (g) emphasized harmful evidence on cross-examination of Detective Eillison, to-wit, that Ellison believed the victim; (k) overlooked objecting to the defective jury charge; and (l) neglected to call Cavendar as a witness. Doc. 3 at 11. Green also argues counsel was ineffective for: (h) improperly moving for a directed verdict in the presence of the jury; (i) betraying the promise made to the jury in opening statements that evidence would be presented about the victim being troubled and the existence of threats; and (j) misunderstanding the law concerning admission of evidence, specifically the text messages between Chris Vick and Green that contained threats. Doc. 3 at 11. Lastly, Green challenges

(m) the "cumulative effect of counsel's errors" and (n) the "totality of counsel's representation." Doc. 3 at 11.

### 3. Relitigation Bar

"By its terms[,] § 2254(d) bars relitigation of any claim 'adjudicated on the merits' in state court, subject only to the exceptions in §§ 2254(d)(1) and (2)." *Harrington v. Richter*, 562 U.S. 86, 98. To overcome the relitigation bar, the petitioner bears the burden of showing "that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *White v. Woodall*, 572 U.S. 415, 419 (2014) (quoting *Richter*, 562 U.S. 86, 103 (2011)); *see also Thomas v. Vannoy*, 898 F.3d 561, 566 (5th Cir. 2018) (reaffirming the "relitigation bar").

Green cannot meet that high burden. He merely lists the IAC grounds he previously raised in his state habeas application and presents no arguments or law in support of any of his IAC claims. Doc. 3 at 10-11; Doc. 18 at 7-10. Neither Green's petition nor his reply brief addresses the trial court's reasoned findings and conclusions recommending that his IAC claims be denied or the Court of Criminal Appeal's decision to adopt the trial court's findings and conclusions. Doc. 15-1 at 6-12.

In his reply brief, Green points only to alleged procedural deficiencies in the state habeas proceeding. Doc. 18 at 7-10. He complains the state court did not hold "a live" evidentiary hearing and relied instead on defense counsel's affidavit, which was not only "inconsistent and conclusory" but also "failed to answer most of the allegations." Doc. 18 at 8, 10. Green faults the state court for (1) inappropriately trying to "fill in gaps," (2) overlooking four damaging IAC claims, and (3) making an "unreasonable fact-finding" about evidence of a possible motive, to-wit, a series of text messages wherein [AV's] father threatened Green for a soured business

dealing." Doc. 18 at 8-9. Based on these alleged procedural inadequacies, Green maintains that the state habeas resolution of the IAC claims was "unreasonable and resulted in unreliable findings." Doc. 18 at 10.

Green is wrong, however, as "a full and fair hearing is not a precondition to according § 2254(e)(1)'s presumption of correctness to state habeas court findings of fact nor to applying § 2254(d)'s standards of review." *Valdez v. Cockrell*, 274 F.3d 941, 948 (5th Cir. 2001). Indeed, infirmities in collateral proceedings are not grounds for federal habeas relief. *See Rudd v. Johnson*, 256 F.3d 317, 319-20 (5th Cir. 2001).

Because Green has made no attempt to carry his burden to show that the state court erred in denying his IAC claims, he cannot surmount the relitigation bar of § 2254(d). Thus, his IAC claims lack substantive merit and fail on that basis.

### 4. Presumption of Correctness & Strickland Prejudice

In addition, the state habeas court expressly found trial counsel's responses to Green's IAC claims credible and, thus, his affidavit is presumed reliable by this Court. Doc. 15-1 at 9 (no. 13); Doc. 15-1 at 4-5 (counsel's affidavit). As noted, credibility determinations by the state habeas court are entitled to substantial deference on federal habeas review and are presumed correct under § 2254(e)(1) absent clear and convincing evidence to the contrary. *See Coleman v. Quarterman*, 456 F.3d 537, 541. Again, Green offers no evidence to contradict the state court's credibility determination and his reply-arguments mainly criticize his counsel's responses as conclusory and unprofessional. Doc. 18 at 9-10. Without more, Green's mere opinions and criticism do not suffice to overcome the deference provided counsel's sworn statement under the law. On this record, the state court's finding that trial counsel's affidavit was credible is presumed correct under § 2254(e).

Furthermore, Green's IAC claims also must be rejected because he has made no attempt to show that he was prejudiced by trial counsel's performance.  Although his petition lists the 16 grounds on which he believes trial counsel performed deficiently, again, Green offers no factual or legal enhancement.  Doc. 3 at 10-11.  Specifically, as discussed *supra*, he identifies no prejudice to the venire panel due to venire member 21's comments.  Likewise, venire members 9, 14, and 38 were examined and were not among those who said that they would hold Green's decision not to testify against him.  Doc. 13-5 at 101-106 (RR 3).  Thus supporting the trial court's findings that each was sufficiently rehabilitated.  Doc. 15-1 at 7 (no. 5).  Significantly, Green does not attempt to link his counsel's purported failures—to object at trial or call Cavendar as a witness—to the jury's verdict or argue that but for counsel's errors, the result would have been different.  *See Bradford v. Whitley*, 953 F.2d 1008, 1012 (5th Cir. 1992) (the prejudice prong cannot be satisfied by mere speculation and conjecture).  The same is true of conclusory assertions not supported by cogent legal arguments.  *See Miller v. Johnson*, 200 F.3d 274, 282 (5th Cir. 2000) ("conclusory allegations of ineffective assistance of counsel do not raise a constitutional issue in a federal habeas proceeding").

Consequently, the state court's decision to deny Green's IAC claims was not based on an unreasonable application of *Strickland* or an unreasonable determination of the facts.

### G.  Ineffective Assistance of Appellate Counsel

Green contends that appellate counsel rendered ineffective assistance by failing to raise the jury charge errors on direct appeal, specifically the definitions of "on or about" and "intent to arouse or gratify" and the "omission of venue-Navarro County, Texas."  Doc. 3 at 11.  As with his other IACs claims, Green does not attempt to carry his burden to show that the state court erred in denying his IAC claims.  Thus, he again cannot surmount the relitigation bar.  That

notwithstanding, the state court found no error in the jury charge as analyzed *supra*. Doc. 15-1 at 11 (no. 9). Consequently, Green's appellate counsel was not ineffective for failing to raise the issues on direct appeal. *See United States v. Wilkes*, 20 F.3d 651, 653 (5th Cir. 1994) ("'Counsel is not deficient for, and prejudice does not issue from, failure to raise [on direct appeal] a legally meritless claim.'" (quoting *Smith v. Puckett*, 907 F.2d 581, 585 n.6 (5th Cir. 1990))). Therefore, the state court's implicit rejection of this IAC claim was neither based on an unreasonable application of federal law or an unreasonable determination of the facts.

### H. Actual Innocence Claim

Green asserts his actual innocence relying on AV's 2018 recantation affidavit. Doc. 3 at 12-13. According to Green, AV's affidavit "outlines the falsity of her trial testimony" and overall inadequacy of the evidence. *Id.* In his reply, Green also avers his innocence claim stems from the *Brady* violation and, as such falls within the parameters of *Herrera v. Collins*, 506 U.S. 390 (1993). Doc. 18 at 10. He is wrong.

First, actual innocence is not cognizable as a freestanding federal habeas claim. *Herrera*, 506 U.S. at 404 ("[A] claim of 'actual innocence' is not itself a constitutional claim, but instead a gateway through which a habeas petitioner must pass to have his otherwise barred constitutional claim considered on the merits."); *Foster v. Quarterman*, 466 F.3d 359, 367-68 (5th Cir. 2006) ("[A]ctual-innocence is *not* an independently cognizable federal-habeas claim.") (emphasis in original); *see also Reed v. Stephens*, 739 F.3d 753, 766-68 (5th Cir. 2014) (summarizing circuit precedent precluding freestanding innocence claim and considering actual innocence only in the context of barred claims).

Second, as discussed *supra*, Green's *Brady* claim concerned the alleged suppression of AV's Baylor medical records, not AV's recantation affidavit, which was prepared long after the trial.

Third, contrary to Green's assertions, the state court's finding that AV's recantation affidavit

was not credible is presumed correct for the reasons discussed *supra*.  Accordingly, Green's actual innocence claim lacks merit.

## IV.    REQUEST FOR AN EVIDENTIARY HEARING

In his petition and reply brief, Green requests an evidentiary hearing "to resolve previously unresolved issues, such as his actual innocence claim," Doc. 3 at 13, and to conduct "a true fact-finding" concerning the credibility of AV's affidavit, Doc. 18 at 11-12.  However, "review under § 2254(d)(1) is limited to the record that was before the state court that adjudicated the claim on the merits." *Pinholster*, 563 U.S. at 181; *see also Blue v. Thaler*, 665 F.3d 647, 656 (5th Cir. 2011) ("[t]he same rule necessarily applies to a federal court's review of purely factual determinations under § 2254(d)(2)").  Here, as in *Pinholster*, Green's habeas petition concerns only claims under Section 2254(d)(1) that were adjudicated on the merits in state court.  As discussed above, Green cannot overcome the limitation of section 2254(d)(1) on the record that was before the state court.  Therefore, Green is not entitled to an evidentiary hearing.

## V.    CONCLUSION

For the foregoing reasons, Green's petition for writ of habeas corpus should be **DENIED**, and this case should be **DISMISSED WITH PREJUDICE**.

**SO RECOMMENDED** on June 6, 2022.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law. Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b). To be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute,* 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).